## CITY OF CHARLESTOWN *vs.* INHABITANTS OF GROVELAND.

A man having a settlement within the Commonwealth cannot acquire a settlement in a town by residence and paying taxes, or by having and living upon a freehold, if his wife is committed to the State Lunatic Hospital upon his complaint, or with his knowledge, and remains there at the expense of any town, or of the Commonwealth, without his paying for her support, during part of the time necessary to give him a settlement.

SHAW, C. J. Action of contract, to recover a reimbursement for money paid by the city of Charlestown for the support of Pamelia Munroe, as a pauper, at the State Lunatic Hospital. It is agreed that the alleged pauper had the settlement of her husband, Moses C. Munroe; that he was born in Chester, N. H., but acquired a settlement by his father or grandfather in Bradford, now Groveland, in this State; and that the town of Groveland is liable for her support, unless upon the facts the court are of opinion that the husband acquired a settlement in Charlestown.

The ground on which the defendants rely is, that Munroe acquired a settlement in Charlestown by the twelfth mode provided in the Rev. Sts. *c.* 45, § 2, by residing ten years in a town and paying all taxes assessed on him in any five of those years.

The facts are that Munroe took up his residence in Charlestown in 1836, and so continued to the time this suit was brought, and annually paid a poll tax, being the only tax assessed on him; and that he was, during that time, without visible property. This would bring him within the rule of the statutes, and give a settlement in Charlestown, had he not been brought within the well established exception, that when a settlement is to be gained by a ten years' residence, it must be a residence after he is twenty one years of age, acting in his own right, and not supported in whole or in part as a pauper; and this is the question.

It appears that in the spring of 1844, whilst Munroe and his wife were residing in Charlestown, the wife became insane, and was sent to the State Lunatic Hospital, but it does not appear by what authority. On that occasion he gave bond for her support, which was paid during her short stay. She returned

to Charlestown; and in November following, on the complaint and with the consent of her husband, she was again committed to the State Lunatic Hospital by the judge of probate. No security appears to have been given by the husband on that occasion; he was not called upon for her support; and as she was supposed to be a state pauper, her support was charged to the Commonwealth. In 1854 a demand was made upon the city of Charlestown, the place of the residence of the lunatic, when committed, and notice of this was given to the defendants; subsequently suit was brought by the trustees of the hospital against Charlestown, and judgment recovered, which has been paid. It is for a reimbursement of this sum that Charlestown seeks to recover against Groveland.

It is undoubtedly the duty of a husband to support his wife, so long as he is of sufficient ability to do so, either at his own house or at the hospital, as the exigencies of her condition may require. Accordingly, when the wife of Munroe was sent to the hospital the first time, he very properly undertook to pay for her support. Had he not done so, the city of Charlestown, as the place of her residence, would have been liable for her support, if not a state pauper.

When she was committed the second time, with the consent and by the request of the husband, by the judge of probate, no security being given for her support, the city of Charlestown, by force of the statute, as the place from which she was committed, would have been liable for her support. If Charlestown was not immediately charged, it was because the trustees of the hospital supposed that she was a state pauper. She was therefore supported, from the time of her second commitment, as a pauper, either at the expense of the city of Charlestown, or at the expense of the Commonwealth.

Aid and assistance furnished by public authority, and according to law, to the child or wife of any person liable for such support, in present need of relief, at his request or with his consent, are equivalent to like aid and assistance furnished to the party himself, and, for the time during which they are furnished, render the person a pauper. *Taunton* v. *Middleborough*, 12 Met. 35.

Munroe then began to receive support for his wife, as a pauper, in 1844, and from that time became a pauper; and this took off two of the ten years necessary to gain a settlement in Charlestown.

The support of the wife of one having no visible property, with the consent of the husband, prevents the husband from acquiring a settlement in his own right. *Hanover* v. *Turner.* 14 Mass. 227. This is not controlled by the case of *Berkeley* v. *Taunton*, 19 Pick. 480, it being found there that the husband did not even know that his wife was receiving support from the town of Berkeley.

Money paid by a town or city to the State Lunatic Hospital, on the ground of its being the place of the pauper's residence when committed, may be recovered back from the town of the pauper's settlement, on due notice given of the claim of the hospital on such town of residence. *Andover* v. *Easthampton*, 5 Gray, 390.

Any person is held to be a pauper who is in want of immediate relief, by reason of sickness, insanity, or immediate need of food, clothes and shelter, upon the principle of simple humanity; and overseers of every city, district and town are bound by law to furnish him with support, without stopping to inquire whether the person has relatives liable for his support, or a settlement in any other town, and although other means of relief may exist, if at the time they are beyond reach and unavailable. *New Bedford* v. *Chace*, 5 Gray, 28.

The counsel for the defendants seek to distinguish this from the cases decided, by the fact that, during the four first years of the support of Munroe's wife at the hospital, she was supported by the Commonwealth, and not by any city or town, and that this distinguishes the case from the cases cited for the general doctrine. The argument is, that to prevent one from acquiring a settlement in either of the modes requiring residence, the exception is only when the pauper is supported by the town of his settlement, or the town of his residence; that being supported by the Commonwealth in the lunatic hospital does not constitute one a pauper, any more than if supported by a charitable society

But the court are of opinion that this argument is unsound in principle, and is not supported by authority. We consider every person a pauper, who receives relief at the public expense, and such as is provided by law for persons standing in need of immediate relief. And we think the term is so understood and applied, as well in law as in common parlance.

The principle upon which the exception to the general rule is founded extends as well to persons relieved and supported by the State, as by any city, town or district. That principle is, that residing and paying taxes for a certain time is performing those duties of a citizen which are usually done by an industrious and useful member of the community, and which shall entitle him and those dependent on him to share in the relief provided by such community for those members who may happen, through sickness or otherwise, to fall into distress.

The only case which gives color to the distinction between persons who have no settlement within the State and those who have, in affecting their right to gain a settlement whilst receiving support as paupers, is that of *Mount Washington* v. *Clarksburgh*, 19 Pick. 297. The distinction was there suggested for a reason therein stated; but the cause was not decided on that ground, but, on the contrary, expressly on the ground that the residence was of sufficient length to enable the pauper to gain a settlement, without computing any part of the time during which he was receiving support as a pauper.

But in the more recent case of *West Newbury* v. *Bradford*, 3 Met. 428, the foregoing case is commented upon and explained; and the principle is distinctly stated, that any person receiving support from the public cannot at the same time be acquiring a settlement in any town, because he is not in that condition which makes him so far a contributor to the common fund as to entitle him to relief from it when he falls into distress and want. There is no distinction in principle therefore between those who are relieved ultimately by the State, as state paupers, and those who are relieved by any city or town. We are of opinion therefore that Munroe did not acquire a settlement in Charlestown, and therefore by the agreement of the parties the entry will be        *Judgment for the plaintiff.*

City of Charlestown *v.* Inhabitants of Groveland.

*P. W. Chandler & G. O. Shattuck*, for the plaintiff, besides authorities cited in the opinion, referred to Rev. Sts. *c.* 46, §§ 1, 13 ; *c.* 48, §§ 9, 10 ; *Sts.* 1837, *c.* 228, § 7; 1841, *c.* 77 ; *Cummington* v. *Wareham*, 9 Cush. 585 ; *East Sudbury* v. *Waltham*, 13 Mass. 460 ; *East Sudbury* v. *Sudbury*, 12 Pick. 1 ; *Oakham* v. *Sutton*, 13 Met. 192 ; *Choate* v. *Rochester*, 13 Gray, 92.

*S. B. Ives, Jr.*, for the defendants, cited also *Brewster* v. *Dennis*, 21 Pick. 233 ; *Peters* v. *Westborough*, 20 Pick. 506.*

---

* A similar decision was made in Worcester, October term 1860.